## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

PATRICK RANDELL MCINTOSH,                 Case No. 23-cv-3149 (JRT/ECW)

          Plaintiff,

v.                                        **REPORT AND RECOMMENDATION**

LT. GALLION, CAPTAIN HESS,
WARDEN JARED RARDIN, and DR.
DIONNE HART,

          Defendants.

---

This action comes before the Court on Defendants' Motion to Dismiss (Dkt. 18). This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of Patrick Randell McIntosh's ( "McIntosh") claims that while incarcerated at Federal Medical Center Rochester ("FMC Rochester"),[1] Defendants violated his rights under the American with Disabilities Act ("ADA"); the Rehabilitation Act; the Health Insurance Portability and Accountability Act ("HIPAA"); and his rights

---

[1]    According to the last Notice of Change of Address from McIntosh (Dkt. 13), and the BOP's inmate locator, McIntosh is presently designated at the Federal Medical Center Institute in Butner ("FMC Butner"), North Carolina. *BOP inmate Locator*, www.bop.gov/inmateloc// (last visited August 29, 2024). The Court received McIntosh's new address on or about January 29, 2024. (Dkt. 13.)

pursuant to the First, Fourth, Fifth, and Eighth Amendments to the Constitution.  (Dkt. 1 at 4.)  In particular, the Complaint alleges as follows:

On or about October 21, 2022, Defendant Dr. Dionne Hart ("Dr. Hart"), a psychiatrist at FMC Rochester, came to McIntosh's cell and called him a racist for standing up to another inmate for being threatening.  (Dkt. 1 at 7 ¶ 11.)  Dr. Hart than wrote up both McIntosh and the other inmate on a "Code 203" incident report for threatening bodily harm.  (*Id.*)

On or about October 22, 2022, Defendants Lieutenant Anthony Gallion and Captain Jeremy Hess placed McIntosh in handcuff restraints and escorted him to the medical office within the secure housing unit.  (*Id.* at 7-8 ¶ 12.)  Once he was in the medical office, they had McIntosh sit down without taking off his handcuff restraints.  (*Id.* at 8 ¶ 13.)  Caption Hess repeated a threat made by Defendant Warden Jared Rardin at McIntosh's orientation, that "if you put your hands on my staff we will do everything we can to restrain you.  I am not threatening you or anything."  (*Id.*)  Lieutenant Gallion then told McIntosh, "I will put a black man in your cell and you are all either going to fight, fuck, or become friends."  (*Id.* at 8 ¶ 14.)  This was a threat to set up a rape or beating between two inmates.  (*Id.*)  After this intimidation and harassment used by Captain Hess, he told McIntosh that he did not have a disorder, but that he was just an "asshole."  (*Id.* at 8-9 ¶ 15.)  McIntosh was also ordered to write Dr. Hart an apology, even though she instigated the Code 203 and violated his confidentiality by giving his diagnosis to law enforcement without his consent.  (*Id.* at 9 ¶ 16.)

McIntosh was escorted back to his cell by Lieutenant Gallion. (*Id.* at 9 ¶ 17.) On his way back, a nurse asked McIntosh if he needed anything from nursing. (*Id.*) McIntosh responded, "yes, please," and then Lieutenant Gallion yelled into his ear "yes, ma'am." (*Id.*)

FMC Rochester is an institution run of on fear, retaliation, intimidation, and manipulation. (*Id.* at 9 ¶ 18.) While Warden Rardin could not be everywhere, he set the tone of ethics for the prison and is ultimately responsible for creating a hostile environment. (*Id.* at 9-10 ¶ 18.)

McIntosh wrote an "insincere apology" to Dr. Hart out of fear of retaliation, physical harm, and rape. (*Id.* at 10 ¶ 19.)

On or about April 6, 2023, Captain Hess came to McIntosh's cell and threatened to put him in four-point restraints for requesting a "black box" from an FMC Rochester officer after being denied the right to a shower a day earlier by an Officer Schumacher and being given an incident report by Officer Gilbertson for standing up to a staff member's deliberate indifference. (*Id.* at 10 ¶ 20.)

According to McIntosh, Captain Hess possibly suffers from a mental disorder and seeks enjoyment by continually violating the rights of staff and inmates. (*Id.* at 10-11 ¶ 21.)

In his request for relief, McIntosh seeks actual, compensatory, and punitive damages, as well as all costs and attorney's fees. (*Id*. at 6.)

On November 8, 2023, this Court issued an Order requiring McIntosh to file an addendum clarifying the capacity in which he is suing each individual Defendant:

For that part of the Complaint, it is unclear whether McIntosh means to sue this action's Defendants in their individual capacities, their official capacities, or both capacities. This determination may affect both the relief to which McIntosh may be entitled, as well as the manner in which service of process is effected. *See* 28 U.S.C. § 1915(d). The Court therefore orders McIntosh to submit—within 14 days of this Order's date—a one-page addendum specifying the capacity or capacities in which he is suing each defendant, failing which this Court will construe the Complaint's relevant claims as being official-capacity claims only.

(Dkt. 6.)  On November 20, 2023, McIntosh filed an Addendum, clarifying that he was suing all of the individual defendants in this case in both their personal and official capacities.  (Dkt. 8.)

On April 8, 2024, Defendants filed the present Motion to Dismiss.  (Dkt. 18.) They also filed a Certificate of Service stating they served the Motion and supporting documents on McIntosh by mailing them to FMC Butner, where he was located at that time.  (Dkt. 23; *see* Dkt. 13.)  On April 9, 2024, the Court issued a Briefing Order (Dkt. 24), giving McIntosh until May 7, 2024 to file a response to the Motion to Dismiss.  (Dkt. 24.)  McIntosh has not filed an opposition to the Motion to Dismiss as of the date of this Report and Recommendation.

## II.    LEGAL STANDARD

Defendants bring the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)—and specifically, under 12(b)(1) and 12(b)(6).  (Dkt. 18.)  Rule 12(b)(1) concerns claims that a court lacks subject matter jurisdiction over part or all of an action. *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008).  "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks and citations

4

omitted).  As a result, subject matter jurisdiction "is a threshold requirement" that courts must assure themselves of "in every federal case." *Turner v. Armontrout*, 922 F.2d 492, 493 (8th Cir. 1991) (citing *Kronholm v. F.D.I.C.*, 915 F.2d 1171, 1174 (8th Cir. 1990)).

When considering a Rule 12(b)(1) motion, "'the Plaintiff will have the burden of proof that jurisdiction does in fact exist.'" *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (quoting *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)).

A court considering a Rule 12(b)(1) motion must first determine whether the motion presents a "facial attack" or a "factual attack." *Id.* at 729 n.6 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the Plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731-32 (11th Cir. 1982)).  For a factual attack, in contrast, a court "considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (quoting *Osborn*, 918 F.2d at 729 n.6)).  "If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2005) (citing cases).

Motions to dismiss under Rule 12(b)(6) do not concern jurisdiction; instead, they assert that a plaintiff's pleadings "fail[] to state a claim upon which relief can be

granted." Fed. R. Civ. P. 12(b)(6). Certain safeguards apply to a Rule 12(b)(6) motion. First, when considering a Rule 12(b)(6) motion, a court construes pleadings in the light most favorable to the nonmoving party, and the court must take a pleading's factual allegations to be true. *See*, *e.g.*, *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)). Second, a court must afford the nonmoving party all reasonable inferences from a pleading's allegations. *See, e.g., Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010) (citing *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009)).

Notwithstanding these points, to withstand a Rule 12(b)(6) motion, litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require detailed factual allegations, but [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

As a result, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the

Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint 'to state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678 (ellipses in *Ritchie*)). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Following *Twombly* (and proving consistent with *Iqbal*), the Eighth Circuit has provided further guidance on Rule 8's pleading standard:

> While a Plaintiff need not set forth "detailed factual allegations," *Twombly*, [550 U.S. at 555], or "specific facts" that describe the evidence to be presented, *Erickson v. Pardus*, [551 U.S. 89, 93 (2007)] (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. *Twombly*, [550 U.S. at 555 n.3]. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," [*Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 840 (8th Cir. 2004)], and it need not "conjure up unpled allegations" to save a complaint. *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

For Rule 12(b)(6) purposes, the Eighth Circuit has interpreted a complaint's "face" to include public records and materials that the complaint embraces, as well as materials attached to the complaint. *See, e.g.*, *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d

7

758, 764 (8th Cir. 2012) (quoting cases); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700

(8th Cir. 2003) (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802-03 (8th Cir. 2002)).

### III.    ANALYSIS—MOTION TO DISMISS

Defendants argue that the Court should dismiss the Complaint.  Specifically,

Defendants argue that the claims for violation of McIntosh's rights pursuant to the First,

Fourth, Fifth, and Eighth Amendments to the Constitution, which they construe as claims

under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), should be

dismissed for failure to state a claim, as *Bivens* has not been and should not be extended

to the violations alleged under the Complaint.  (Dkt. 19 at 1, 3-11.)[2]  Defendants also

argue that the *Bivens* claim against Warden Rardin should be dismissed on the additional

basis that *Bivens* does not recognize respondeat superior liability in *Bivens* actions.  (*Id.*

at 11 (citing *Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the

unconstitutional conduct of their subordinates under a theory of respondeat superior.")).)

As to McIntosh's ADA, Rehabilitation Act, and HIPAA claims, the Defendants argue

that the ADA does not apply to the federal government, McIntosh has not alleged that he

is a qualified individual with a disability or explained how he was denied access to a

program receiving federal funds for the purposes of the Rehabilitation Act, and that

HIPAA does not create a private right of action.  (*Id* at 11-12.)  Finally, Defendants argue

that McIntosh's claims for injunctive and declaratory relief against Defendants in their

---

[2]    Unless stated otherwise, page citations in this Report and Recommendation refer
to the page numbers assigned by CM/ECF.

official capacities and against the United States are moot as he no longer resides at FMC Rochester.  (*Id.* at 13.)

## A.    Declaratory and Injunctive Relief

As noted above, Defendants argue that because McIntosh is no longer an inmate at FMC Rochester, his requests for injunctive and declaratory relief related to Defendants' alleged conduct at the facility are moot under Rule 12(b)(1).  (*Id*. at 13.)  McIntosh does not appear to dispute this argument, and in fact had filed a notice of address change with the Court before Defendants filed their Motion stating that he is presently at FMC Butner. (S*ee* Dkt. 13.)

There is no direct request for declaratory or injunctive relief in the Complaint, only an assertion in the Addendum that McIntosh is suing Defendants in their official and individual capacities.  (Dkt. 6.)  A suit against a federal officer in his official capacity is treated as a suit against the United States.  *See Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998).  At least some courts have found that while official capacities claims are not cognizable under *Bivens*, they may extend to prospective relief, such as injunctive and declaratory relief, under the general federal question jurisdiction statute, 28 U.S.C. § 1331.[3]  *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1232 (10th Cir. 2005) (citation omitted); *see also Mohammed S. v. Tritten*, No. 20-CV-783 (NEB/ECW), 2020 WL 2750109, at *2 n.5 (D. Minn. May 27, 2020); *but see Staszak v. United States*, 847 F.

---

[3]    The Court notes that McIntosh did not specify § 1331 in his pleadings except for the purposes of this Court's jurisdiction over this matter, in which he declared that the Court had federal question jurisdiction over this case under the statute.  (Dkt. 1 at 4.)

App'x 365, 366 (8th Cir.), *cert. denied*, 142 S. Ct. 381 (2021) ("We also agree that the *Bivens* claims failed. Sovereign immunity barred the *Bivens* claims against the United States, and against Gallardo in her official capacity."); *Fiorito v. Drummy*, No. 22-CV-0923, -0925, -0927 (PJS/TNL), 2023 WL 4052639, at *2 (D. Minn. June 16, 2023) (noting that "a litigant cannot seek injunctive relief under *Bivens*"); *Hill v. Holinka*, No. 06-CV-4720 (PJS/JJG), 2008 WL 549928, at *2 (D. Minn. Feb. 27, 2008) ("[A] litigant cannot seek injunctive relief under *Bivens*, because injunctive relief directing an agent of the federal government to act in a specific way in his or her capacity as a federal agent would amount to relief against the United States itself.").

Regardless, the Court need not decide whether the Complaint and Addendum have adequality stated a claim for prospective relief against Defendants in their official capacities, as any such relief would be moot. "Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies." *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (quoting *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000)). "Article III mootness divests the Court of subject matter jurisdiction." *Ahmed v. Sessions*, Case No. 16-cv-02124 (DSD/HB), 2017 WL 3267738, at *2 (D. Minn. July 11, 2017). A court may consider matters outside the pleadings in a factual attack on subject matter jurisdiction when deciding whether a live controversy exists. *See Davis*, 886 F.3d at 677, 679. The Eighth Circuit has held that "[p]laintiffs seeking prospective relief based on past actions must show 'a real and immediate threat that they would again suffer similar injury in the future.'" *Mitchell v. Dakota Cty. Soc. Servs.*, 959 F.3d 887, 896 (8th Cir. 2020)) (quoting *Mosby v. Ligon*, 418

F.3d 927, 933 (8th Cir. 2005)) (cleaned up); *see also Lambros v. United States*, No. 19-CV-1870 (MJD/ECW), 2020 WL 5505909, at *8 (D. Minn. July 20, 2020), *R. & R. adopted*, No. 19-CV-1870 MJD/ECW, 2020 WL 5500421 (D. Minn. Sept. 11, 2020), *aff'd*, 850 F. App'x 464 (8th Cir. 2021) (applying the same to a *Bivens* action). Declaratory relief is also a form of prospective relief. *See Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 31 (2010).

There is no dispute that McIntosh is no longer at FMC Rochester and thus no longer subject to the alleged illegal policies and conduct by Defendants. As such, the Court finds that any request for declaratory relief or injunctive relief is moot[4] and any such request for relief or judgment should be dismissed without prejudice.[5] *See Senty-Haugen v. Goodno*, 462 F.3d 876, 889 (8th Cir. 2006) (holding that a prisoner's claims for injunctive and declaratory relief related to the conditions of his imprisonment while in isolation were moot after the prisoner's period of isolation ended); *see also Reichling v.*

---

[4]    The Court notes that none of the exceptions to the mootness doctrine apply here. *See Ahmed*, 2017 WL 3267738, at *2-3 (listing four exceptions to the mootness doctrine, including that (1) secondary or "collateral" injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit.); *see also Ireland v. Anderson*, No. 3:13-CV-3, 2016 WL 7324102, at *2 (D.N.D. July 5, 2016) (citation omitted).

[5]    Because the Court recommends dismissal of this case based on a lack of subject matter jurisdiction, the Court recommends that the claim be dismissed without prejudice. *See Jenkins v. Bowker*, No. 19-cv-1051 (NEB/LIB), 2019 WL 2931581, at *2 (D. Minn. June 4, 2019), *R. & R. adopted*, 2019 WL 2921796 (D. Minn. July 8, 2019); *see also Romero v. Pinnacle Equities, LLC*, 283 F. App'x 429, 431 (8th Cir. 2008) (citation omitted) (modifying dismissal for lack of subject matter jurisdiction to be without prejudice).

*Best,* No. 22-2366, 2022 WL 12165683, at *1 (8th Cir. Oct. 21, 2022) ("Because, as Reichling concedes in his pro se brief, his transfer to another prison during the pendency of his action mooted his request for injunctive relief, we lack jurisdiction."); *Scher v. Chief Postal Inspector,* 973 F.2d 682, 683 (8th Cir. 1992) (per curium) (citations omitted) (holding that a former inmate's request for declaratory and injunctive relief under *Bivens* with respect to the handling of mail was moot because the inmate was no longer in prison); *Lambros,* 2020 WL 5505909, at *8.

## B.   *Bivens* Claims

"A *Bivens* claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights." *Buford v. Runyon*, 160 F.3d 1199, 1203 n.6 (8th Cir. 1998) (emphasis added) (citing *Bivens*, 403 U.S. 388). "'*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.'" *Hartman v. Moore*, 547 U.S. 250, 255 n.2 (2006) (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)); *see also Buford*, 160 F.3d at 1203 n.6 (citation omitted) ("A *Bivens* claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights.").

The Supreme Court has made it clear that expansion of *Bivens* is "a disfavored judicial activity and [has] gone so far as to observe that if the Court's three *Bivens* cases had been decided today, it is doubtful that we would have reached the same result.  And

12

for almost 40 years, we have consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 589 U.S. 93, 101-02 (2020) (cleaned up); *see also Egbert v. Boule*, 596 U.S. 482, 486 (2022) ("In *Bivens* [], this Court authorized a damages action against federal officials for alleged violations of the Fourth Amendment. Over the past 42 years, however, we have declined 11 times to imply a similar cause of action for other alleged constitutional violations.").

The Supreme Court has previously recognized *Bivens* claims brought for excessive force in violation of the Fourth Amendment dealing with a warrantless search and illegal arrest, *see Bivens*, 403 U.S. at 388; workplace discrimination on the basis of sex in violation of the procedural due process of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979); and deliberate indifference to a serious medical need in violation of the prohibition against cruel and unusual punishment under the Eighth Amendment, *see Carlson*, 446 U.S. at 14. *See also Ahmed v. Weyker*, 984 F.3d 564, 567 (8th Cir. 2020) ("On only three occasions has the Supreme Court recognized a cause of action under *Bivens*.") (cleaned up).

Given the presumption against extending the reach of *Bivens*, the Supreme Court and Eighth Circuit have adopted a two-part test with respect to whether an implied cause of action is available under *Bivens*:

> First, we ask whether the case presents "a new *Bivens* context"—i.e., is it "meaningful[ly]" different from the three cases in which the Court has implied a damages action. *Ziglar*, 582 U. S., at ——, 137 S.Ct., at 1859-1860. Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are "special factors" indicating that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 582 U. S., at ——, 137

> S.Ct., at 1858 (internal quotation marks omitted). If there is even a single
> "reason to pause before applying *Bivens* in a new context," a court may not
> recognize a *Bivens* remedy.

*Egbert*, 596 U.S. at 492 (citation omitted); *see also Ahmed*, 984 F.3d at 567-68 (citations

omitted) (quoting *Farah v. Weyker,* 926 F.3d 492, 498 (8th Cir. 2019)) (citation omitted).

The Supreme Court went on to further explain this analysis:

> While our cases describe two steps, those steps often resolve to a single
> question: whether there is any reason to think that Congress might be better
> equipped to create a damages remedy.  For example, we have explained that
> a new context arises when there are potential special factors that previous
> *Bivens* cases did not consider.

*Id.* (cleaned up).

As to the first step, in looking at whether the present case "is different in a

meaningful way," the "relevant differences can include, among other things, 'the sorts of

actions being challenged, the mechanism of injury, and the kinds of proof those injuries

would require.'"  *Ahmed*, 984 F.3d at 568 (quoting *Farah*, 925 F.3d at 500).  Even small

differences can be "meaningful."  *Id.* (citations omitted).

The Court finds that the actions and mechanism of injury alleged here are different

than those recognized by the Supreme Court.  Multiple courts within this District have

concluded that the Supreme Court has not recognized an implied cause of action for a

violation of the First Amendment.  *See*, *generally*, *Gregg v. Basile*, No. 21-CV-2767

(WMW/TNL), 2023 WL 1786261, at *2 (D. Minn. Jan. 11, 2023) (collecting cases), *R. &*

*R. adopted*, 2023 WL 1785608 (D. Minn. Feb. 6, 2023).  Indeed, the Supreme Court has

recently reiterated that "[w]e have never held that *Bivens* extends to First Amendment

claims."  *Egbert*, 598 U.S. at 498 (quoting *Reichle v. Howards*, 566 U.S. 658, 663, n.4

(2012)); *see also Debenedetto v. Ford*, No. 24-CV-636 (JRT/DTS), 2024 WL 1810591, at *2 (D. Minn. Mar. 27, 2024) ("[T]he remedy made available by *Bivens* does not extend to claims of alleged retaliation in violation of a litigant's First Amendment rights.") (citation omitted), *R. & R. adopted*, 2024 WL 1810226 (D. Minn. Apr. 25, 2024).

The only *Bivens* action under the Fifth Amendment recognized by the Supreme Court was in *Davis*, *supra*. In *Davis*, the Court held that the Fifth Amendment provided a damages remedy for a claim of gender discrimination, allowing the administrative assistant of a Congressman to sue her former employer after she was fired because she was a woman. *See* 442 U.S. at 230-48. The *Davis* Court noted that the Congressman's recent electoral defeat meant that "equitable relief in the form of reinstatement would be unavailing," and that the federal courts were well-equipped to evaluate Davis's gender discrimination claim. *Id.* at 245. However, with respect to the Due Process Clause, the Court considered an implied cause of action under the Fifth Amendment as the "Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws." *Id.* at 234. Here, not only is McIntosh not asserting gender discrimination, but his claims with respect to due process do not involve equal protection. Given that the Supreme Court has not recognized a *Bivens* action dealing with a prisoner on procedural or substantive due process grounds, McIntosh's claims would require extending *Bivens* to a new context. *See Brown v. Cooper*, No. CV 18-219 (DSD/BRT), 2018 WL 6977594, at *12 (D. Minn. Dec. 11, 2018) ("In *Davis*, the Supreme Court recognized a *Bivens* remedy for a Fifth Amendment equal protection claim, but that case involved discrimination in an employment setting, not a correctional setting. While the

claims may have some parallels, 'even a modest extension is still an extension.'") (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 148 (2017)), *R. & R. adopted*, 2019 WL 121943 (D. Minn. Jan. 7, 2019), *aff'd in relevant part as modified*, 787 F. App'x 366 (8th Cir. 2019).

The only *Bivens* action under the Fourth Amendment recognized by the Supreme Court was an excessive force claim against FBI agents for handcuffing a man in his own home without a warrant under the Fourth Amendment. *See Bivens*, 403 U.S. at 392-97. Handcuffing a convicted federal inmate while incarcerated during transport within the prison is on its face distinguishable from the warrantless seizure of an individual in his own home. *See Bruno v. United States*, No. 3:18CV1390-MCR-HTC, 2019 WL 2719803, at *3 (N.D. Fla. May 30, 2019) ("Defendant Boston correctly notes, the Fourth Amendment violation in *Bivens* arose out of FBI agents handcuffing a man in his own home without a warrant, an event completely distinguishable from correctional officers detaining, searching, and seizing a convicted federal inmate.") (cleaned up), *R. & R. adopted*, 2019 WL 2717973 (N.D. Fla. June 28, 2019).

The Court acknowledges that the Supreme Court has recognized a claim against prison officials for failure to treat an inmate's asthma under the Eighth Amendment. *See Carlson v. Green*, 446 U.S. 14, 16 (1980). To survive a Rule 12(b)(6) motion to dismiss a medical deliberate indifference claim under the Eighth Amendment, McIntosh must allege facts that show: "(1) he suffered from objectively serious medical needs, and (2) the defendants actually knew of, but deliberately disregarded, those needs." *Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir. 2015) (citation omitted). However, there are no facts

alleged in the Complaint that McIntosh suffered from any serious medical needs or how any of the Defendants knew of, but deliberately disregarded, those needs. As such, the Complaint fails to plausibly allege any failure-to-treat claim under *Bivens* and it should be dismissed. To the extent that McIntosh is asserting an excessive force claim under the Eighth Amendment, Courts have held that excessive force claims arising from the Eighth Amendment present new *Bivens* contexts. *See Clutts v. Lester*, 676 F. Supp. 3d 698, 707 (N.D. Iowa 2023) ("Courts have consistently found that excessive force cases arising under either the Fifth or Eighth Amendment to present new *Bivens* contexts.") (marks and citation omitted); *see also Oneil v. Rodriguez*, Civ. A. No. 18-3287, 2020 WL 5820548, at *3-5 (E.D.N.Y. Sept. 30, 2020) (declining to extend *Bivens* to an Eighth Amendment excessive force claim).

As to the second step, "[t]he focus is on whether there are any special factors that cause us to pause before acting without express congressional authorization. It does not take much, because Congress is usually in the better position to weigh the costs and benefits of creating a new substantive legal liability." *Ahmed*, 984 F.3d at 570 (cleaned up); *see also Egbert*, 596 U.S. at 492. Here, special factors counsel against extending *Bivens* to McIntosh's First Amendment claims in the prison context; Fourth Amendment due process claims under the Fifth Amendment, and possible Eighth Amendment claims relating to his restraint and threats made against him. First, Congress has already legislated extensively with respect to prisoners' rights under the Prison Litigation Reform Act, and "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." Ziglar, 582 U.S. at 148; *see also Brown*, 2018 WL

6977594, at *12 (citation omitted) ("Prisoner civil rights litigation, moreover, is heavily regulated by Congress, counseling hesitation in the expansion of remedies available to prisoners.").

These factors also include whether a *Bivens* claim would interfere with the functioning of the executive branch and whether other remedies exist to deal with the injures alleged by McIntosh. *Ahmed*, 984 F.3d at 570-71; *see also Ziglar*, 582 U.S. at 122 ("[A]n alternative remedial structure . . . alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."). Courts in this district have concluded that if *Bivens* claims were permitted to be extended in the context of the BOP's actions, then "BOP officials faced with the expanded possibility of personal liability may act differently . . . when dealing with [individuals] in BOP custody." *Biron v. Sawyer*, No. 19-CV-2938 (SRN/LIB), 2020 WL 6121270, at *15 (D. Minn. Aug. 21, 2020) (citation omitted), *R. & R. adopted sub nom.*, 2020 WL 5812970 (D. Minn. Sept. 30, 2020).

Further cautioning against an extension of *Bivens* to the claims in the Complaint is the fact that other remedies exist to deal with the harms alleged by McIntosh.[6]  As set forth above, the Supreme Court commands consideration of whether alternative remedies are available. *See Egbert*, 596 U.S. at 501. .  Inmates whose First Amendment, due process interests, and rights against excessive force are harmed in federal prison may seek relief under the BOP Administrative Remedy Program. *See* 28 C.F.R. §§ 542.10-542.19.  Indeed, "[t]he purpose of the [BOP] Administrative Remedy Program is to allow

---

[6]    The Court also notes that this is not a case where McIntosh alleges he suffered a physical injury as the result of Defendants' actions.

an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." *See* 28 C.F.R. § 542.10(a); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("Inmates in respondent's position also have full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief—long recognized as the proper means for preventing entities from acting unconstitutionally—and grievances filed through the BOP's Administrative Remedy Program."). The availability of such remedies is a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Hardy v. Bureau of Prisons*, No. CV 18-794 (DSD/BRT), 2019 WL 3085963, at *3 (D. Minn. June 10, 2019) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)), *R. & R. adopte*d, 2019 WL 3080916 (D. Minn. July 15, 2019).

Moreover, McIntosh admits in his Complaint that he properly used the prison grievance process. (*See* Dkt. 1-1.) In other words, McIntosh availed himself of the BOP Administrative Remedy Program under 28 C.F.R. §§ 542.10-542.19. The fact that McIntosh's administrative remedies were not successful does not mean that such a process does not exist as an alternative remedy. *See Malesko*, 534 U.S. at 69 (noting that "[s]o long as the Plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability"). The Court finds that alternative remedies in the form of the grievance process and the ability to seek injunctive relief counsels against expanding *Bivens* to McIntosh's claims. *See Hardy,* 2019 WL 3085963, at *3 (First Amendment claim); *see also Dockery v. Baltazar*, No. 4:20-CV-01676, 2021 WL 2014969, at *3 (M.D. Pa. May 19, 2021) ("I join other

courts that considered the issue in concluding the BOP's Administrative Remedy Program provides an alternative process.  Significantly, the fact that Dockery was unsuccessful in utilizing the administrative process does not mean that such a process does not exist as an alternative remedy.").

* * *

For all of the reasons stated above, the Court finds that *Bivens* should not be extended to McIntosh's First Amendment claims, Fourth Amendment claims, due process claims under the Fifth Amendment, and possible Eighth Amendment (related to excessive force) claims against Defendants, and that these claims against Defendants in their individual capacities should be dismissed with prejudice.

## C.    Respondeat Superior

Defendants argue that the *Bivens* claims against Warden Rardin should be dismissed, as the Complaint does not allege that Warden Rardin took specific action against McIntosh.  (Dkt. 19 at 11.)

"Because vicarious liability is inapplicable to *Bivens* . . . suits, a Plaintiff must plead that each Government-official defendant, through the official's own individual action, has violated the Constitution."  *Iqbal*, 556 U.S. at 676; *Webb v. Hedrick*, 409 F. App'x 33, 35 (8th Cir. 2010) ("Bivens liability cannot be established solely on a theory of respondeat superior."); *Buford*, 160 F.3d at 1203 n.7 (citing *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)).

Here, the only allegations with respect to Warden Radin are that he was not necessarily around when the actions against McIntosh occurred, he set the tone of ethics

20

for the prison, he has ordered restraints be placed on other inmates, and that he is ultimately responsible for creating a hostile environment at FMC Rochester. (Dkt. 1 at 9-10 ¶ 18.)

Given that McIntosh has not alleged that Warden Rardin took specific action towards him, the Court finds that his *Bivens* claims based on a theory of respondeat superior should be dismissed, on this additional basis, with prejudice.

## D.    ADA Claims

McIntosh's ADA claims fail to state a claim for relief. The ADA defines public entitles covered by the ADA as any state or local government entity. *See* 42 U.S.C. § 12131(1)(A)-(B) (defining public entities covered by the ADA). Under the plain language of the statute, the Federal Government is not a covered public entity and there is no explicit waiver of sovereign immunity contained in the statue. Therefore, relief against federal BOP employees under the ADA is unavailable to McIntosh in this context. *See County of St. Louis v. Thomas*, 967 F. Supp. 370, 376 (D. Minn. 1997) (citing 42 U.S.C. § 12131(1)(A)-(B)) ("[T]he ADA does not provide a cause of action against the federal government"); *see also Jackson v. Fed. Bureau of Prisons*, No. CIV. 06-1347 MJD/RLE, 2007 WL 843839, at *19 (D. Minn. Mar. 16, 2007) (same).

As such, McIntosh's ADA claims against Defendants should be dismissed with prejudice.

## E.    Rehabilitation Act Claims

The Rehabilitation Act, 29 U.S.C. § 794(a), provides in relevant part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his

disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." The elements of a claim under Rehabilitation Act include that: (1) the claimant is a qualified individual with a disability; (2) the individual was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) he was discriminated against based on his disability. *See Wojewski v. Rapid City Reg'l Hosp.*, Inc., 450 F.3d 338, 344 (8th Cir. 2006) (citation omitted).

McIntosh's claim fails to state a claim for relief as he has not alleged pursuant to Rule 8's notice requirements any facts supporting that he is a qualified individual with a disability or how he was denied access to a program receiving federal funds based on his disability. Therefore, the claim should be dismissed without prejudice for failure to state a claim for relief.

## F.    HIPAA Claims

As best as this Court can discern, McIntosh asserts a claim for relief under the HIPAA on the basis that Dr. Hart violated McIntosh's confidentiality by giving his diagnosis to law enforcement without his consent. (Dkt. 1 at 9 ¶ 16.) Even assuming that this is true, "HIPAA does not create a private right of action." *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) (citing cases); *see also Nahal v. Allina Health Sys.*, No. 18-cv-631 (DWF/KMM), 2018 WL 6729660, at *5-6 (D. Minn. Oct. 4, 2018) ("HIPAA does not create a private right of action for any violations of the Act . . . .") (citing *Mason v. Minn. Dep't of Human Servs.*, No. 16-cv-2340 (JRT/LIB), 2017 WL 1555888, at *4 (D. Minn. Apr. 3, 2017)), *R. & R. adopted*, 2018 WL 6727066 (D. Minn. Dec. 21, 2018). As

a result, whatever HIPAA claims McIntosh means to assert, he cannot pursue them through a private lawsuit.  The Court thus recommends dismissing McIntosh's HIPAA claims with prejudice.

## V.    RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS RECOMMENDED** that:

1.      Defendants' Motion to Dismiss (Dkt. 18) be **GRANTED**;

2.      The Complaint be dismissed **WITHOUT PREJUDICE** as to Plaintiff's requests for declaratory relief and injunctive relief against Defendants in their official capacities;

3.      This Action be dismissed **WITH PREJUDICE** as to the claims under *Bivens* for monetary relief against Defendants in their individual capacities with respect to Plaintiff's allegations of First Amendment, Fourth Amendment, Fifth Amendment, and possible Eighth Amendment (related to excessive force) violations, as well as all respondeat superior claims against Defendant Warden Jared Rardin;

4.      Plaintiff's claim under *Bivens* for deliberate indifference to a serious medical need under the Eighth Amendment, and claim under the Rehabilitation Act be dismissed **WITHOUT PREJUDICE**; and

5.      This Action be dismissed **WITH PREJUDICE** as to Plaintiff's claims under the Americans with Disability Act and the Health Insurance Portability and Accountability Act.

DATED: August 29, 2024                 *s/ Elizabeth Cowan Wright*
                                       ELIZABETH COWAN WRIGHT
                                       United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).